## REAGAN ET AL. *v.* HADLEY.

MORTGAGE.—*Release of Procured by Fraud.*—*Foreclosure against Subsequent Purchaser.*—*Pleading.*—*Complaint.*—In an action by the holder of a mortgage on real estate, to foreclose it against the mortgagor and the owner, by purchase from the mortgagor, of the equity of redemption, the complaint alleged, that, prior to the conveyance of such equity, the plaintiff had been induced to execute a release of his mortgage, by the false and fraudulent representations of the mortgagor, that he had negotiated with a third person for a loan on such land, with which to pay the plaintiff's debt, but that, to secure such loan, plaintiff must release his mortgage, so that the mortgagor could execute a first mortgage to such third person for such loan, with which he promised at once to pay the plaintiff's debt; that the mortgagor had never made any such negotiation; and that, on the release of such mortgage, he had conveyed ·such land to his codefendant, who yet owed the purchase-money therefor.

*Held,* on demurrer, that fraud in the mortgagor is sufficiently charged, and that the complaint is sufficient as to both defendants.

SAME.—*Answer.*—*Parties.*—*Pleading Struck Out.*—*Promissory Note.*—Where, by a simple answer to the complaint in such action, the defendant owner of the equity of redemption admits the purchase of such land for a certain sum, and alleges that he had executed to the mortgagor his promissory note therefor, and that the same had been sold and assigned to a certain person, without notice of such mortgage, it was not error to strike out of such answer a prayer, that such assignee be made a party to the action to answer as to his interest.

SAME.—*Reply.*—A reply to such answer, alleging the same facts as those set out in the complaint, and averring that such conveyance had been made by the mortgagor to his codefendant with the full knowledge by the latter of such fraud, is sufficient on demurrer.

SAME.—*Consideration for Assignment.*—A reply to such answer, alleging that such promissory note had been assigned to a person who received it without giving any new consideration therefor, but simply in discharge of an existing debt then due from the mortgagor to the assignee, is insufficient.

SAME.—*Instruction to Jury.*—*Rights and Liabilities of Subsequent Purchaser.*—*Estoppel.*—*Notice.*—*Former Adjudication.*—The court, in such cause, instructed the jury, that, if the mortgagor had not committed the fraud alleged, the owner of the equity of redemption was not liable to the ·plaintiff; that if he had committed such fraud, but the owner of the equity, without knowledge thereof and before the assignment of such note, had induced the assignee to take such assignment by assuring him that he had no defence thereto and would pay him at maturity, then he was estopped from asserting any defence as against the assignee, and was not

liable to the plaintiff; but that, if he had given the assignee no such assurances before such assignment, he was liable for the amount of such note to the plaintiff, notwithstanding the good faith of himself and the assignee, and notwithstanding any thing occurring after the assignment; and that such recovery by the plaintiff would be a good defence to an action against him on such note by the assignee.

*Held,* that the instruction was right.

PRACTICE.—*Harmless Error.—Pleading.—Supreme Court.*—Where a demurrer is improperly overruled to an insufficient pleading, but all the evidence admitted thereunder on the trial was properly admissible under other pleadings, such error is not available on appeal to the Supreme Court.

SAME.—*Instruction to Jury.—New Trial.—Assignment of Error.*—Error in giving or refusing instructions to the jury is proper ground for a new trial, but can not be assigned as error on appeal to the Supreme Court.

From the Morgan Circuit Court.

*W. R. Harrison* and *W. S. Shirley,* for appellants.

*S. K. Harryman, G. W. Grubbs* and *M. H. Parks,* for appellee.

HOWK, J.—The appellee, as plaintiff, sued the appellants, as defendants, in the court below.

Appellee's complaint was in three paragraphs, and issues of law and fact were formed on each of these paragraphs; but, before the final submission of the cause to the jury, the appellee virtually abandoned the first and third paragraphs of his complaint, and the jury were so instructed by the court below.

In our examination of this cause, therefore, we will consider the second paragraph of appellee's complaint alone, as if it were in fact, what it is in effect, the only complaint in the action.

In the second paragraph of his complaint, the appellee alleged, in substance, that on the 23d day of May, 1865, he sold to the appellant Sylvester Johnson and one Robert Johnson, who were brothers and partners in business, certain land hereinafter described; that, in part consideration for said land, the said Sylvester and Robert Johnson executed their promissory note of that date for two thousand dollars, a copy of which note was filed with said paragraph as a part thereof, which said note was

made payable six years and six months after date, with interest thereon from December 25th, 1865, without relief from valuation or appraisement laws; that, to secure the payment of said note, the appellants Sylvester and Mary B. Johnson and said Robert Johnson executed to appellee a mortgage on said real estate, a copy of which mortgage was filed with said paragraph as a part thereof; that afterward said Robert Johnson conveyed his right, title and interest in and to said land to said Sylvester Johnson, who assumed and undertook the payment of said debt; that afterward, on the — day of ———, 187—, appellant Sylvester Johnson, intending and contriving to cheat and defraud the appellee, falsely represented to appellee, that he, said Sylvester Johnson, wanted, and was arranging, to negotiate a loan with a certain insurance company, for the purpose of procuring money with which to pay off and discharge appellee's debt, and that he had so far arranged to negotiate said loan as that all that remained to enable him to consummate said arrangement, and negotiate said loan, was, that the appellee should release said mortgage on said land, so that he might thereby mortgage it for said loan, and that he could only procure said loan by appellee's releasing his said mortgage, and said Sylvester Johnson thereupon agreed and pledged himself, that, if appellee would make and execute such a release, he would and could thereby procure said loan, and would, with the money so procured, immediately pay off and discharge appellee's said debt; that appellee, relying upon said fraudulent representations, and believing that said Sylvester so intended to negotiate said loan, and to pay him his debt, which had then been long due, made and executed a release of said mortgage, and recited therein that said debt was paid and satisfied, and did so for the purpose aforesaid and none other, and was induced thereto by said representations and none other; that the appellant Sylvester Johnson was not then intending nor attempting to negotiate a loan with any insurance com-

pany, and had not made any arrangement for such purpose, and was not intending thereby to procure money to pay off appellee's said debt; but that, having so procured said release to be executed, he, said Sylvester, thereupon, in violation and utter disregard of his promise, and in fraud of appellee's rights, sold the said land to the appellant —— Reagan, who agreed to pay him therefor the sum of——— dollars, and executed his promissory notes therefor; that there was still unpaid and owing, upon said notes, by said Reagan, the sum of two thousand five hundred dollars, and that appellee's said note, except the sum of one thousand dollars paid thereon, was due and unpaid, to appellee's damage in the sum of two thousand dollars. Wherefore appellee demanded judgment against said Sylvester for two thousand dollars, that said mortgage be foreclosed to the extent of the amount of money yet due from said Reagan upon said land, or to the extent of appellee's claim, and for all other proper relief.

. The copies of the note and mortgage, which were made parts of said paragraph of complaint, were filed therewith and are set out in the record.

The appellants Johnson and wife, and the appellants, the Reagans, severing in their defence, demurred to the second paragraph of appellee's complaint, for the alleged insufficiency of the facts therein to constitute a cause of action, which demurrers were severally overruled by the court below, and to these decisions the appellants severally excepted.

And the appellants Jesse and John W. Reagan, severing in their defence, for answer to the second paragraph of appellee's complaint, said, in substance, admitting the execution of the note and mortgage as therein averred, that it was true, as therein set forth, that appellee, on the 8th day of April, 1872, and again on the 11th day of April, 1873, executed and delivered to said Sylvester Johnson acknowledgments of satisfaction, and releases, of said mortgage, duly acknowledged, and the same were

duly entered of record with and upon said mortgage, copies of which releases were filed with said answer; and said appellants, the Reagans, further averred, that said Sylvester Johnson, immediately after the execution and record of said releases, procured a loan of two thousand five hundred dollars of The North-Western Mutual Insurance Company, and executed a mortgage therefor to said company upon the lands set out in said mortgage to the appellee, and before the execution of said release had negotiated said loan of said company; that on the 12th day of April, 1873, said Sylvester Johnson, by a warranty deed, conveyed said lands to the said Reagans, subject to said mortgage to said company, for six thousand dollars, which sum said Reagans paid to said Sylvester, except the sum of two thousand dollars, for which they executed notes to said Sylvester in instalments of five hundred dollars, which notes said Sylvester immediately assigned and transferred for value, as follows: one note to Charles W. Ballard and William A. Poe, who transferred the same for value to Samuel M. Mitchell, who then owned and held the same; and the other three of said notes said Sylvester transferred and endorsed, for value, to Leander Johnson, who, for value, immediately transferred the same to John C. Burton & Co., who then owned and held the same, which transfers and assignments of said notes were made, and said notes delivered, to the then holders thereof, before the said Reagans had any notice that appellee had or held any claim on said land, or that his said mortgage had not been fully paid and satisfied; and that the said Reagans had been notified of the said assignments of their said notes to the said holders thereof, long before the said Reagans had any notice that the appellee's mortgage was not paid; that before said note was transferred to said Ballard and Poe by said Sylvester Johnson, the said Reagans, without any knowledge or notice of any of the fraud or matters set up in appellee's complaint,

undertook and promised said Ballard and Poe, that said
Reagans had no defence to said note, and would pay the
same to said Ballard and Poe, according to its tenor and
effect, nor had said Ballard and Poe, or Mitchell, any
notice of any of the fraud or matters set up by appellee
in his complaint, when said note was so assigned. And
the said Reagans denied all fraud charged in said com-
plaint, and denied that they then were, or were when this
suit was commenced, indebted to said Sylvester Johnson
in any sum for said land. Wherefore the said Reagans
said, that the appellee was estopped from foreclosing said
mortgage, etc.

To this answer of the appellants Jesse and John W.
Reagan, the appellee replied in three paragraphs, as fol-
lows:

1. A general denial

2. Appellee admitted the execution of the release of
the mortgage set out in said answer, and dated April 8th,
1872, but alleged, that said release was procured by the
fraud of said Sylvester Johnson, as averred in the com-
plaint. Appellee also admitted the execution of the further
release of said mortgage, dated April 11th, 1873, and set
out in said answer, but alleged, that said release was pro-
cured by the fraud and deceit of said Sylvester John-
son, in the manner following, to wit: That on said April
11th, 1873, said Sylvester Johnson, contriving and intend-
ing to cheat and defraud appellee, falsely represented to
appellee, that he, said Sylvester, had arranged to procure
a loan with a certain insurance company, with which to
pay off and discharge appellee's debt, and that all that
remained to enable him to consummate said loan was,
that the appellee should release said mortgage on said
land; that the release theretofore executed by appellee had
never been recorded, and had been theretofore lost and de-
stroyed, and said loan of said money had never been
procured or received by him, and said mortgage yet re-
mained, and was, unsatisfied of record, and that he could

only procure said loan by appellee's releasing his said mortgage; and that he thereupon agreed and pledged himself, that, if appellee would make and execute said release of said mortgage, he could and would thereby procure said loan, and wholly pay off and discharge appellee's said debt; that appellee relied upon said false and fraudulent representations, and thereupon made and executed said release of said mortgage, and recited therein, that said debt was paid and satisfied; that he did so for the purpose aforesaid, and none other, and was induced thereto by said representations, and by none other; and appellee alleged, that said Sylvester Johnson was not then arranging, and had not then made any arrangement, to procure or negotiate any loan from any insurance company, and was not intending thereby to procure any money, wherewith to pay off appellee's said debt, but that he had theretofore contracted to sell and convey said lands so mortgaged to his codefendant Reagan, to whom he afterward, in pursuance of said contract, sold and conveyed the same, who took and accepted said conveyance with full knowledge of all the facts, and of said representations. Wherefore, etc.

3. And for a further reply to said answer, and to so much thereof as alleged the assignment of the notes evidencing the balance of unpaid purchase-money, appellee said, that he admitted said notes were assigned, but that said assignees took them voluntarily and without consideration passing at the time, but in discharge and payment of a debt or debts theretofore contracted and then unpaid. Wherefore, etc.

And the appellants demurred separately and severally to the second and third paragraphs of said reply, for an alleged want of sufficient facts therein to constitute a reply to appellants' said answer, which demurrer was overruled, and to this decision the appellants excepted.

The action was tried by a jury in the court below, and a verdict was returned, finding for the appellee and against

the appellant Sylvester Johnson, and assessing appellee's damages in the sum of two thousand and thirty-three dollars and fifty-three cents, and finding against the appellants "Jesse Reagan and John W. Reagan, for three notes in the hands of J. C. Burton & Co., for five hundred dollars each."

The appellants Jesse and John W. Reagan moved the court below, on written causes filed, for a new trial, which motion was overruled, and said appellants excepted. And a judgment was then rendered upon the verdict, from which judgment this appeal is here prosecuted.

In this court, the appellants have assigned the following alleged errors of the court below:

1st. In overruling the appellants' demurrers to the second paragraph of appellee's complaint;

2d. In sustaining appellee's motion to strike out a part of the appellants', the Reagans', answer;

3d. In overruling the appellants', the Reagans', demurrers to the second and third paragraphs of appellee's reply;

4th. In misdirecting the jury, in and by instructions given, numbered 1, 2, 3, 4, 5 and 6, and each of them;

5th. In refusing to instruct the jury as asked in writing by the appellants, and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10, and each of them;

6th. In overruling appellants' motion for a new trial; and,

7th. In rendering judgment against the appellants, as to the three notes held by Burton & Co.

We will consider and decide the various questions presented by these alleged errors, in the order in which the errors, if they exist, were committed by the court below.

The appellants, not alone the Reagans, but also the Johnsons, earnestly insist that the second paragraph of appellee's complaint "was bad on demurrer, would be bad, because not setting forth facts sufficient to constitute

a cause of action, under the statute, without demurrer, and that, for both reasons, the court below erred in overruling the demurrer to it."

Our view of this second paragraph differs, *toto cœlo,* from that thus expressed by appellants' counsel. If the facts alleged in this second paragraph were true as stated, and the appellants' demurrers concede them to be true, and if such facts were not controlled or modified by other intervening equities, in our opinion, the appellee would be clearly entitled to all the relief asked for in his said second paragraph. The question presented by appellants' demurrers is one that must be determined upon the facts stated in the paragraph demurred to; and it will not do to argue that the paragraph is bad on demurrer, because " the rights of innocent parties had become involved in the matter," when it does not appear from any averment in the paragraph, that there were any innocent parties. It is insisted by appellants' counsel, that the fraudulent representations of the appellant Sylvester Johnson, as stated by appellee in the second paragraph of his complaint, consisted only in Johnson's promise to pay his debt to appellee in the future. We think that counsel misapprehend the force and effect of the averments in this paragraph of the complaint. We recognize the doctrine that a mere promise to pay a debt in the future, however false and fraudulent it may be in fact, is not in law a representation upon which fraud can be predicated, with a view to the rescission of a contract or the recovery of damages. " Representations upon which fraud can be predicated must be of an existing fact, or of a fact alleged to exist, and not a mere promise to do something afterwards." That is the law of this State, as the same has been stated by this court in a number of cases. *Fouty* v. *Fouty,* 34 Ind. 433. See, also, *Adkins* v. *Adkins,* 48 Ind. 12.

But, in the case at bar, the false representations of said Sylvester Johnson, upon which the charge of fraud was

predicated, related not only to his promise to pay appellee's debt, but also to the fact alleged by him to exist, that he had an arrangement with a certain insurance company for a loan of money, wherewith to pay appellee's debt, and all that remained to enable him to consummate said arrangement and negotiate said loan was, that appellee should release his said mortgage on said land, so that he, Johnson, could mortgage said land to said company to secure said loan.

In our opinion, the facts stated in the second paragraph of appellee's complaint were sufficient to constitute a cause of action against each and all of the appellants, and their demurrers thereto were correctly overruled.

The second alleged error, assigned by the appellants, calls in question the decision of the court below, in sustaining the appellee's motion to strike out a part of the appellants' answer. Appellee's motion, the decision of the court thereon, and the part of the answer which was so struck out were made part of the record by a proper bill of exceptions. The part of the answer so struck out was in these words: "And they especially pray that said Samuel M. Mitchell and said John C. Burton & Co., which firm is composed of the following persons, to wit: John C. Burton, William A. Pfaff and John W. Pfaff, be made parties herein, that the ultimate rights of said plaintiff, and said Mitchell, and said John C. Burton & Co. to the residue of the purchase-money of said land may be determined."

It will be observed, that the language just recited was a part of the answer of the appellants Jesse and John W. Reagan to appellee's complaint. The appellants, the Reagans, had filed no counter-claim nor cross-complaint in this action; nor were they seeking any affirmative relief against any of the parties to the action. The only pleading filed by said appellants in response to. the second paragraph of the appellee's complaint was denominated by them, and was in fact, an "answer to the second paragraph

of said complaint." In such a pleading, it seems to us, that the language above recited was wholly out of place. It was neither matter of defence, counter-claim, nor set-off. It was mere surplusage in said answer, and was properly struck out by the court below, on appellee's motion. It does not appear from the record, that Mitchell or any member of the firm of John C. Burton & Co. made any application to the court below to be made parties to this action. Nor does it appear from any showing made in the court below, or apparent in the record, that a complete determination of the controversy in this action, could not be had without the presence of either Mitchell or the members of the firm of John C. Burton & Co., as parties to the action; and, in such a case, they were not necessary parties to the suit. Our conclusion is, that the court below committed no error in sustaining appellee's motion to strike out the said part, before recited, of said answer.

The third alleged error of the court below, complained of by the appellants, was its decision in overruling their demurrers to the second and third paragraphs of appellee's reply.

The ruling of the court below upon the second paragraph of the reply, and the assignment of such ruling as error, present substantially the same questions for our consideration as those we have already considered and decided, in passing upon the sufficiency of the facts stated in the second paragraph of appellee's complaint to constitute a cause of action. We need not consider those questions further, but, for the reasons there given, we hold, that no error was committed by the court below in overruling appellants' demurrer to the second paragraph of appellee's reply.

The third paragraph of the reply was applicable, by its terms, to so much of the appellants' answer as alleged that the notes given by the Reagans for the unpaid balance of the purchase-money had been assigned by said

Sylvester Johnson, and notice of such assignment given to said Reagans, before they had notice that appellee's mortgage had not been fully paid and satisfied, or that the appellee had or held any claim on said land. In reply, particularly to this part of appellants' answer, the appellee said, that he admitted, that said notes were assigned, but alleged, that said assignees took them voluntarily, and without consideration passing at the time, but in discharge and payment of a debt or debts theretofore contracted and then unpaid.

It is reasonably certain, we think, that the court below erred in overruling appellants' demurrer to this third paragraph of appellee's reply; but it is equally true, in our opinion, that the error was an entirely harmless one. The evidence adduced upon the trial, in the court below, is properly in the record, and it clearly appears, from a close and thorough examination of this evidence, that no evidence was offered or admitted on the trial which was not admissible under the other pleadings in the action. This court has repeatedly held, that it would not reverse a judgment for an erroneous decision, where it clearly appeared, from the entire record, that the party complaining of such decision was not injured thereby. *The Indianapolis, etc., R. R. Co.* v. *Smythe,* 45 Ind. 322; *The Evansville, etc., R. R. Co.* v. *Baum,* 26 Ind. 70; and Buskirk Prac. 284.

The fourth and fifth alleged errors, assigned by appellants, are both proper causes for a new trial, in a motion therefor addressed to the court below. If not assigned as causes for a new trial, in appellants' motion therefor, their assignment as errors in this court would present no question for our consideration. And when they are assigned as causes for a new trial in the court below, the only error properly assignable in this court is the overruling of the motion for such new trial.

The overruling of their motion for a new trial, by the court below, is the sixth alleged error complained of by

the appellants in this court. Several causes for such new trial were assigned by the appellants, in their motion therefor, but we will consider only such of these causes as appellants' counsel have discussed in their argument of this case in this court, deeming the others as virtually waived.

It is insisted by counsel, that the court below erred, in giving to the jury, of its own motion, instructions numbered 3 and 4. These instructions were as follows :

" 3. Under these issues and the admissions of the parties, the questions you are to decide are,

"1st. Did Johnson fraudulently procure the release of the mortgage?

"4. If you find he did not, then that will be the end of the case against the Reagans, and you could only find against Johnson the amount of the plaintiff's note.

"But if you find, that Johnson did procure the release of the mortgage by fraud, then the next question for you to decide is, did the Reagans, before they had notice of the fraud, and before their notes were sold and transferred by Johnson, induce the purchasers thereof to buy the same?"

We are much at a loss to understand, from the argument of appellants' counsel, the nature and force of their objections to these two instructions of the court to the jury. Apparently, these instructions were framed by the court upon the pleadings, to inform the jury, in succinct and clear terms, of the exact questions which the parties had submitted to them for trial, and which they must decide.

We think that these questions were fairly stated to the jury by the court in the two instructions complained of, and it would seem, from the comments of counsel thereon, that they complained of these instructions, not because of any error in them, but because they were apparently introductory to another instruction, which, they

insist, was erroneous.   This other instruction was as follows:

"6.   If you find that Johnson committed a fraud in procuring the release of the mortgage, then your next inquiry is, did the Reagans, before they had notice of the fraud, and before Johnson had parted with their notes to Burton & Co., tell Burton & Co., that they had no defence to their notes, and that they would be paid at maturity?

"If you find both of these facts in the affirmative, then the Reagans have innocently estopped themselves from defending against the notes in the hands of Burton & Co., and the money can not be reached by the plaintiff, and you must find for the Reagans.   But if you find no representations, promises or inducements were made to Burton & Co., by the Reagans, before Burton & Co. purchased the notes from Johnson, no matter what was done after Burton & Co. had purchased the notes, then the Reagans have not estopped themselves from defending against the payment of said notes to Burton & Co., should they be required to pay the same to plaintiff; and, in that event, plaintiff has a right to have the money, when due, paid upon his debt, although it may have been shown that the notes held by John C. Burton & Co. were in good faith transferred to, and received by, them, before they or the Reagans had received notice of any fraud on the part of Johnson in procuring the release of the mortgage from plaintiff."

We have set out this instruction in full, because in it will be found, we think, a clear exposition of the precise questions at issue in this action between the appellants, the Reagans, and the appellee.

It would seem from the record, that Johnson virtually confessed the gross fraud wherewith he was charged by appellee, in the second paragraph of his complaint; for, although Johnson appeared in the action and was represented therein by the able attorneys of the Reagans, yet apparently it was not deemed advisable or necessary that

any answer, not even a general denial, should be pleaded in his name or behalf, to the second paragraph of appellee's complaint.

The Reagans answered this paragraph of the complaint, however, and the gist of their defence was, as to the unpaid balance of the purchase-money for the land, that before they had any notice of Johnson's fraud in procuring the release of appellee's mortgage, or of the fact that appellee asserted any claim against said land, their notes for said purchase-money had been assigned by said Johnson, for value, to innocent parties, without notice of fraud, and were then held by the assignees thereof, under such circumstances that they, the Reagans, as the makers of said notes, would be estopped from making any defence to said notes, in the hands of the said holders thereof.

This defence, and the issues joined thereon, made it the duty of the court below to instruct the jury trying the cause upon the doctrine of estoppel, as the same was applicable to the facts of this case, as stated in the pleadings and shown by the evidence.

In our opinion, this instruction number 6 contains a full and fair statement of the law of this State on the subject of estoppel, as applicable to the case made by the pleadings and evidence in this cause.

It has been repeatedly held by this court, that the declarations or representations of the maker of a note, made to the assignee of such note after his purchase thereof, and which did not induce the assignee to make such purchase, will not estop such maker from setting up any defence, legal or equitable, he may have to such note, in the hands of such assignee. *Jones* v. *Dorr*, 19 Ind. 384; *Ray* v. *McMurtry*, 20 Ind. 307; *Patrick* v. *Jones*, 21 Ind. 249; *Stutsman* v. *Thomas*, 39 Ind. 384.

We have been asked by appellants' counsel to consider, in this connection, the instructions numbered 1, 2, 3, 8 and 9, which the Reagans asked the court below to give,

but which the court refused to give, to the jury trying the cause, and we have complied with this request.

We need not set out any of these instructions. As abstract propositions, we are inclined to think that but little, if any, fault could be found with either the manner or the matter of any of the instructions asked for by the appellants. The chief objection to these instructions, and the one, we apprehend, which led the court below to re-fuse to give them to the jury, was, that they were not applicable to the case made by the pleadings and evidence in this action. The instructions asked were, in our opinion, properly refused.

We have carefully examined and considered the entire record of this cause, the alleged errors assigned thereon, and the arguments of counsel in this court, and our conclusion is, that the cause has been fairly tried and correctly decided, that no error was committed by the court below, in overruling the appellants' motion for a new trial, and that the judgment of that court in this action is in strict accordance with law and the equities of the case, and ought not to be disturbed.

The judgment of the court below is affirmed, at the costs of the appellants.

Opinion filed at May term, 1877.

Petition for a rehearing overruled at November term, 1877.