## ALVORD ET AL. *v.* SMITH.

PREMIUM.— *Wager.—Gaming.— Public Policy.—Horse-Race.—Contract.—*A premium offered by an authorized corporation or a private partnership to the owner of the horse that shall "make the best and quickest time," or exhibit a certain rate of speed, in a proposed trial of the speed of horses, to be had in a proper place, is not a bet or wager, is not unlawful or against public policy, and may be collected in an action by the owner of the horse which "makes" such "time," or exhibits such rate of speed.

PRACTICE.—*Harmless Ruling on Demurrer.—Pleading.*—Where the facts alleged in a special paragraph of answer are admissible in evidence under the general denial, which is also pleaded, the sustaining of a demurrer to the former is harmless.

From the Marion Superior Court.

*J. S. Tarkington, G. H. Chapman* and *U. J. Hammond,* for appellants.

*J. E. McDonald, J. M. Butler, F. B. McDonald* and *G. C. Butler,* for appellee.

BIDDLE, J.—This case was tried upon the second paragraph of the complaint of John F. Smith against the appellants, which is as follows:

"For further cause of action against said defendants, plaintiff says that said defendants were, in the month of July, 1874, partners, under the style of The Indianapolis Trotting Association, and, as such partners, offered certain premiums for a trotting match, to be held at Indianapolis on or about the 11th day of July, 1874, as follows, to wit: To the owner of the five-year-old horse which should make the best time in said trotting match, a premium of five hundred dollars; to the owner of the five-year-old horse which should make the second best time in said trotting match, a premium of three hundred dollars; to the owner of the five-year-old horse which should make the third best time in said trotting match, a premium of two hundred dollars. That plaintiff duly entered his horse Wolford for said trotting match, and the second premium of three hundred dollars was awarded to the plaintiff as owner of said Wolford, said Wolford having made the second best time in said trotting match. Plaintiff further says that said premium is past due and unpaid, although plaintiff has often demanded payment of the same from defendants. Wherefore plaintiff prays judgment for five hundred dollars, and for all proper relief."

A demurrer, alleging insufficiency of the facts stated to constitute a cause of action, was overruled to the complaint.

The answer was, first, a general denial; second, a want of consideration; and, third, as follows:

"The said defendants, and each of them, jointly and separately, for answer to the second paragraph of plaintiff's complaint, say. that the plaintiff, on or about the 11th day of July, 1874, being the owner, and having the control and management, of a certain race horse, named and known as Wolford, entered and ran his said horse in a certain race, with certain other race horses, which took place at a place known as The Southern Trotting Park, near the city of Indianapolis, county of Marion, and State of Indiana, and which was run and trotted for certain stakes and wagers in money; that the sole consideration for the premium demanded, and money sued for, in said second paragraph of the complaint, is money claimed to have been won by said plaintiff by and upon said race, and upon the result of said race, by reason of said horse having been second best in said race. Wherefore," etc.

A demurrer, for want of alleged facts in the third paragraph of answer to constitute a defence, was sustained.

Reply.

The cause was tried by the court, on the following agreed statement of facts:

"1st. In July, 1874, and during the whole of said month, the defendants were associated together under the name and style of The Indianapolis Trotting Association.

"2d. The defendants, under the style of The Indianapolis Trotting Association, offered certain premiums for a trotting match or race and trial of speed between horses, to be held at Indianapolis on or about the 11th day of July, 1874, as follows, to wit: To the owner of the five-year-old horse which should make the best and quickest time

in said trotting match, a premium of five hundred dollars; to the owner of the five-year-old horse which should make the second best and quickest time in said trotting match, a premium of three hundred dollars; to the owner of the five-year-old horse which should make the third best and quickest time in said trotting race, a premium of two hundred dollars.

" 3d.   Plaintiff entered his five-year-old horse Wolford for said trotting match, and paid to defendants one hundred dollars, as an entry fee.

" 4th.   The second premium of three hundred dollars was duly declared to plaintiff, by the persons appointed to act as judges of said match and race, as owner of Wolford, said Wolford having made the second best and quickest time in said trotting match, race and trial of speed.

" 5th.   No part of said premium has been paid.

" 6th.   Said sum of one hundred dollars was paid by plaintiff to defendants, in accordance with the rule of said association, requiring those entering horses to pay for each horse entered for any trotting match, or other race, ten per cent. of the amount offered as premiums, in such trotting match or race.

" 7th.   That five horses, besides plaintiff's said horse, belonging to other persons than the plaintiff, were entered and contested in said trotting match, in harness ; the horses all started trotting and racing, each against the others, at the same time, upon the said track, and plaintiff's said horse made the second best and quickest time in three out of five one mile heats, and accordingly said second premium of three hundred dollars was awarded to plaintiff, as owner of said Wolford, by the judges of said trotting match and race, and accordingly said plaintiff, as the owner of said horse Wolford, was declared by the judges of said trotting match, race, and trial of speed, to be entitled to said second premium of said three hundred dollars. The defend-

ants agree, that, if there is any legal liability, (which they deny,) it is a joint and several liability upon all of them therein."

Upon these facts the court found for the plaintiff the sum of three hundred and twenty-seven dollars and fifty cents.

By a motion for a new trial, which was overruled, and by exceptions to the various rulings of the court, the appellants have reserved the several questions discussed in the briefs of the parties.

Judgment was rendered by the court on the finding, and the defendants below appealed to the court in general term, wherein the judgment was affirmed. Appeal to this court.

The objections taken to the complaint on demurrer are, briefly stated, that it does not aver a consideration for the premium, and that the cause of action is a wager, and can not be recovered at law.

Although the complaint does not contain a direct averment of a consideration for the premium, yet the facts alleged show a sufficient consideration to maintain the action. It is the same consideration as that offered by way of reward to the public, or to any person who shall do some act, obtain something, or accomplish some purpose, which is not unlawful, for the person offering the reward. When the act is done, the thing obtained, or the purpose accomplished, the proposition offering the reward is accepted, and the agreement becomes a contract. *Harson* v. *Pike,* 16 Ind. 140.

Nor do we think the facts alleged in the complaint show a wager or bet. There is a clear distinction between a wager or a bet, and a premium or reward. In a wager or a bet, there must be two parties, and it is known before the chance or uncertain event upon which it is laid is accomplished, who are the parties who must either lose or win. In a premium or reward, there is but one party until the

act, or thing, or purpose, for which it is offered, has been accomplished. A premium is a reward or recompense for some act done; a wager is a stake upon an uncertain event. In a premium it is known who is to give before the event; in a wager, it is not known till after the event. The two need not be confounded.

Nor can we see anything unlawful, or against public policy, in the facts alleged in the complaint. Under our statutes, 1 R. S. 1876, p. 48, encouraging agriculture, and authorizing public fairs, premiums are offered for the best draft horse, saddle horse, trotting horse, the best stock for this or that purpose. These premiums are certainly not wagers. As well might we call an insurance policy a wager, because it is to be paid on an uncertain event, as to call a premium a wager because we do not know who will be entitled to it until the event happens. We see no difference, indeed, in principle, between a premium offered by an authorized corporation, and one offered by a private partnership. Neither are wagers, nor are they unlawful.

The third paragraph of answer is insufficient. It admits the complaint by not denying it, and avers nothing to avoid it. Indeed, it is nothing more than a circumlocutory averment of another state of facts. The demurrer to it was properly sustained. Besides, it contains nothing but what might have been given in evidence under the general denial.

If we are right in holding the complaint good, it follows that the finding of the court is right; for the facts admitted on trial are substantially the same as those averred in the complaint.

The judgment is affirmed, at the costs of the appellants.